King, J.
The defendant in error brought his action in the court of common pleas against the defendant railway company, to recover damages for an injury which occasioned the death of the decedent, Daniel J. Barton, alleging that at the time of the injury — May 2, 1892, — Barton was in the employ of the railway company as a brakeman, running upon a freight train, and at the time in question, the train was running westward over the Lake Shore road, in the state of ÜMichigan, and west of the city of Adrian, a short distance; that near the bottom of a descent or a descending grade of said road, defendant had and maintained a bridge which was negligently constructed and maintained, the sides of the bridge casings extending eight or nine feet above the surface of the bridge, and coming close to the rails of the railroad — so close as to leave but a small space between the sides of the cars as they passed over the - bridge; that the decedent was the forward brakeman on the train in question, and that it was his duty to be upon the front end of the train or upon the cab of the locomotive, and to keep a look-out for the rear end of the train when and while passing over or down such grade; that the night was dark and stormy, and the docedent at the time, was in the tender of the locomotive, and standing in the gangway looking back towards the rear part of the train, as it was his duty to do; *566 that the train was composed of certain freight cars, also some empty passenger coaches, immediately behind which was the caboose of the train, and that the passenger coaches were of greater width than the caboose, and it was necessary, in order to look out from the engine and see the lights upon the caboose, in order to tell whether the caboose or the rear part of the train was properly attached to the train, to lean out of the engine cab; and that while in the performance of that duty, his body was struck against the bridge casing, and he was knocked from the engine and killed, solely because of the narrowness of these bridge casings and their closeness to the side of the train; alleging that the defendant knew of the condition of its bridge and the danger therefrom, or ought to have known it — -knew that it was the duty of the decedent to watch in the manner described, and that that duty was devolved upon him at the time and place, and under the circumstances described. The petition also alleges, that decedent did not know and had no means of knowing, of the dangerous position of the casings; did not know and had no means of knowing, the increased danger from the casings by reason of the presence of the passenger coaches in the train, and had no means of knowing that if he leaned out far enough to see the rear end of the train while passing over the bridge, he was liable to be struck by the bridge casings, which, it is alleged, was known or should have been known to the defendant. The petition further alleges, in addition to these grounds of negligence, that the cause of action arose in the state of Michigan, and that a right of action to recover damages therefor, is given by the statutes of Michigan, and then quotes in the petition, sec. 3391, of’the general statutes of that state. It further avers, that the “state of Michigan., allows the enforcement in its courts of the¿statute of this state which authorizes an action of a like character to the foregoing action.”
All these acts of negligence and the condition of things *567 leading up to this injury, are denied in the answer.
The case went to trial, and resulted in a verdict for the plaintiff. Now, the railway company claims that there were errors committed upon the trial, for which the judgment rendered on that verdict, should be reversed. We will notice such of these objections as we deem most pertinent.
It is claimed, in the first place, that the petition does not state a cause of action, and certain objections were taken to the introduction of testimony under it, and at the conclusion of the introduction of testimony by the plaintiff below, a motion was made that the jury be then instructed to return a verdict for the defendant, which was overruled. It is claimed especially, that the petition is insufficient, in that it does not aver that under the statute pleaded therein, an action such as this is, for negligence such as is charged here, could have been maintained in the state of Michigan if death had not ensued from the injury; and again, that there is no allegation in the petition, other than the pleading of this single section of the statute, showing to whom this right of action in case of death survives — in whose name it should be brought, nor who would be the beneficiary of the amount recovered in the action. This objection,in the form in which I have stated, it may be considered as one objection to the petition. The section of the statute pleaded in the petition, is:
“Whenever the death of a person shall be caused by the wrongful act, neglect, or default of any railroad company or its .agents, and the act, neglect, or default is such as would, if death had not ensued, entitle the party injured, to maintain an action and recover damages in respect thereof; then, and in every such case, the railroad corporation which would have been liable’ if death had not ensued, shall be liable to an action on the case for damages, notwithstanding the death of the person so injured, and al *568 though the death shall have been caused under such circumstances as amount in law to felony,”
It was necessary for the plaintiff to plead, that an action might have been brought upon this cause of action in the state of Michigan; in other words, as this is not such an action as at common law, as we understand it, or in the courts of this country, was ever recognized, but is entirely a creature of statute; and that if there was no cause of action in the place where the injury occurred, there could be none in any other form or jurisdiction. So the plaintiff pleaded this statute. Another question then follows, and that is, whether this state — 'Ohio—either by law or under the doctrine of comity, recognizes the statutes of the state of Michigan, creating rights of action, or creating rights to actions, and enforcing those rights and those statutes in Ohio. And so the plaintiff pleaded, after having set forth this statute, the fact that a right of action could be maintained under it in Michigan; that the state of Michigan allowed the enforcement in its courts of the statutes of this state upon that subject, intending to come within sec. 6134a, which provides, that “when death had been caused in any other state for which a right to maintain an action is given by the statutes of that state, such right may be enforced in this state, in all cases where such other state allows the enforcement in its courts of the statute of this state of a like character. ”
The objection, as argued, is substantially this: that the pleader must have set forth, in order to bring himself within the terms of the Michigan statute, such facts as would have shown that, by the law of Michigan, either that as enacted by its legislature, or .as declared by its courts, the facts in this case would have constituted a cause of action in the state of Michigan if death had not occurred. The clause which I read in the petition following the quotation of the statute, which is as follows: ‘‘Said state of Michigan allows the enforcement in its courts of the statute of *569 this state, which authorizes an action of a like character to the foregoing action,” may be said to plead, in a general form, without a statement of the facts, that the courts of Michigan would enforce an action based upon the facts of negligence alleged in this petition, either where death had, or had not ensued. We do not think that the rules of pleading would require that they should set forth in the petition the decisions of the state of Michigan, or make any further or more particular allusion to the law of that state, as to the right to enforce this cause of action in the state of Michigan. The pleading says, that they have a right to enforce in the state of Michigan, the statute of this state in “an action of a like character to the foregoing action.” That means an action based upon facts of the character herein alleged.
On the trial, soon after the opening of the case, it was “admitted by counsel for both parties in this cause, that the courts of Michigan allow the enforcement in said state, of a statute of the state of Ohio, of a like character of the one involved in this controversy.” That admission is not as broad as the allegation in the petition, which is, that they allow the enforcement of a statute of this, state which authorizes an action of a like character to the one alleged. We think the allegation is sufficient upon that point.
Again it is urged, as I have said, that the law of Michigan with reference to who would be the beneficiary of the recovery, should have been pleaded in the petition; but we hardly think that is necessary, in the absence of a motion to make the petition more definite and certain. The petition sets forth a law, under which it alleges, that an action like this might have been maintained in the state of Michigan; and so far as the statute itself is concerned, it seems to be such a law. Whether there are other sections of the statute which modify this, or not,is not alleged; whether there are other sections which would show who had the right of *570 recovery, it is not alleged; but the statute itself, simply provides, that when the death of a person is caused by negligence, that an action may be maintained. If this is all the law there is in Michigan, how would such an action be maintained? It is easy to determine that question. If this section is the entire law — and until something more is shown about it, it will be presumed to be the entire statute upon that subject — then who would be entitled to maintain such an action would be governed entirely by the laws of Ohio, or rather the laws of Ohio would be taken to determine who would be the proper party in this suit, and the law of Michigan would be presumed to be the same as that of Ohio, in that respect. In other words, if Michigan has enacted no statute providing how such an action shall be brought, for what parties such an action lies, then, when that statute is to be enforced in the courts of another forum, it will be enforced in those courts in the same manner that its local laws are enforced, to-wit: the action will be brought by an administrator as the representative of the deceased person. That is the way all actions for the rights of property, acquired by a person who is deceased, are enforced in the courts of'Ohio. Until something appears to show that this is not the law of Michigan, it will be presumed that it is.
Again, as to who shall be the beneficiary of this right of action, is to be governed by the same rule, so far as construing this pleading is concerned. No other law being pleaded, we may presume that they have no other statute upon the subject, and the proceeds fo the recovery will be governed by the law of general administration, unless there is some statute to take it out of the general course of administration. I do not mean to be understood as saying upon that point that the special statute of Ohio in actions of this class will control, but that the ordinary rules for distributing the property of a decedent’s estate will govern. But if that conclusion be not well founded, then — and upon *571 that I might well rest an opinion upon this question — it is not a matter of any consequence to the defendant, or at least, it does not render the petition liable to an objection that it does not state a cause of action because that is not pleaded. If it be a matter that, the defendant wants to know about, he may take advantage of it by a motion; and if it be a material fact, he could certainly take advantage of it by answer. But if the petition fails to show it, it does not therefore render the petition in such a case.invalid, or render it liable to a demurrer.
The other sections of the Ohio statute following the one creating a right of action, provide how the action shall be brought — that is, in whose name: the name of the personal representatives — and fox whose benefit it shall be brought, and it goes on to make provision as to how the money recovered shall be distributed. It also provides, that the amount recovered in the action shall be proportioned to the pecuniary injury resulting from such death to the personal representatives, for whose benefit such action shall be brought. In pleading a cause of action under the Ohio statute, it is customary, and no doubt proper, to allege who the beneficiaries are — who the persons are who will receive the proceeds of this judgment — in order to place before the court and the jury the persons who will be injured, and in order to enable the jury, from the pleadings and the testimony, to determine what will be the pecuniary injury to those persons. But for that clause in that statute, it would be entirely unnecessary in Ohio, to plead who are the beneficiaries of such recovery. It is only for the purpose of enabling the court and the jury to determine how these persons are pecuniarily injured. The clause “pecuniarily injured” . is omitted, so far as the statute pleaded is concerned, and from an examination of the statutes of Michigan, which were offered in evidence — the whole body of them relating to this cause of áction — it appears that it is entirely omitted *572 from their statute; the expression there being, that the recovery shall be what is fair and reasonable, and not proportioned to the pecuniary injury. We think that the objection to the petition upon this ground, is not well founded,
It is again suggested, that the petition does not allege that the decedent not only did not know and had no means of knowing, but that by the exercise of ordinary care, he could not have known of this negligence of the defendant in the maintenance of this bridge. We certainly cannot see why the allegation that the deceased did not know and had no means of knowing, as alleged here in this petition three or four times, does not cover that whole question. If he had no means of knowing the, position of the bridge and of its casings, and the danger to be apprehended from that position, then he was not negligent in not knowing. It is only when he has the means in his power to ascertain, and neglects to use those means, that he becomes negligent.- So that, upon that question, we think the petition filed in this case was sufficient.
It is urged with considerable earnestness and ability, in addition to these objections, that this judgment should be reversed, mainly because it is not supported by evidence or the law; that it does not show negligence of the defendant in maintaining this bridge; that it does show that t'he decedent himself, was negligent at the time he received the injury, which negligence contributed to it, in not being at the place where he was required to be, and in leaning out of the locomotive tender when he had no particular business to lean out, at least far enough to injure him — in blindly or wilfully leaning out to look at the rear end of the train, when he ought to have been aware of the proximity.of the bridge casing. The main point urged, is the contributory negligence of the decedent, in his failure to observe the rules of the company, in not being in his proper position, and in not using due care to avoid injury to himself. It is claimed *573 that there was no urgency in the matter requiring him to look back towards the rear of the train at that time and place; that if he wanted to ride in the engine of the company, he should keep himself in a position of safety there, ■ — -at least, he should not be leaning his body out of the cab; that his experience on that road had been such as to warrant bringing to him, in the proper exercise of care, a knowledge of the existence of this bridge and.its proximity to the engine. In so far as the question is concerned, as claimed here, as to his duty to look back, it appears from the evidence, that it was a general duty devolving upon him to watch the train, to see that it was all together; that that duty was increased by the injunction of the railroad company, as set forth in its rules, by his ordinary experience in the performance of his duties, when they should be approaching or departing from a station, or when they should be descending or ascending heavy grades; that upon a grade somewhat steep, a train was known to be liable to break apart, and therefore there was a duty incumbent upon all the brakemen — both the general duty which the law would impose and that which the company had imposed by its rules — of observing the train, There can hardly be any question that this train was descending a grade. It is claimed here by the defendant, that it was a heavy grade. The proof shows that the descent was perhaps fifty feet to the mile. It was not a long grade, but it was a sharp one, and was approached from the east by an ascending grade. It is said that there was a liability, in passing over the crown of that grade, for a train to break apart, or just after it had passed over and commenced descending, there would have been a movement of the cars in the train that might possibly break it apart. There is an injunction in the rules, which says, that the employes are required to keep a look-out to observe that condition of affairs. The duty of the decedent would have been, had he discovered such a condition, to *574 notify the engineer; the purpose being to enable the engineer to run the engine and the forward part of the train, after it separated, rapidly enough to keep it out of the way* of the following portion, so that he might avoid a disastrous collision. So that I think, so far as the duty of the decedent is concerned, it satisfactorily appears in the case that he had a duty to perform in watching the train, and if he was properly engaged in the performance of that duty, he would not be negligent. He had no duty, either in the practice generally followed upon the railroad, nor by the rules of the company was any required of him, to watch out ahead of the engine for obstructions upon the track. That duty was always performed by the engineer and the'fireman, whose proper and only place was upon the locomotive. The rules of the company which are so much relied upon, are rules 675 and 678. Those are the two principal ones.
Rule 675, provides:
“The proper place for a freight train conductor while his train is in motion, is the cupola of his caboose, if it have one. If the caboose should not be provided with a cupola, he will then maintain such other position, either on the topi or inside, as will give him a full view of his train and enable him to see that his train men properly perform their duties, and to know that his brakemen go out promptly when necessary to flag, He must also keep a sharp look-out, especially when rounding curves. He must require all of his brakemen to be on top of the train at least one mile before arriving at and while passing all stations and stopping places, descending or ascending grades, or at any point or time when extra precaution is necessary to insure safety. He should not ride on the engine except in cases of emergency. ”
That rule in and of itself, imposes no duty on the brakeman, and would be no notice to him, that he had any particular duty to perform except to obey the orders of the con-, ductor; but there are other rules which prescribe to him the duty of being upion the top of the train, and watching the tiain while in motion. Rule 678, is one particularly applicable to that subject: ° *
*575 “In cold or inclement weather, the rear brakeman may ride in the caboose, and the front brakeman on the engine, occasionally, but while the train is descending heavy grades or approaching stations, all the brakemen must be at their respective posts on the top of the train. A brakeman, when riding on the engine, must obey the engineer’s instructions as to the proper time to return to his post.”
The excuse made by the plaintiff, in the trial of this case below, for the decedent being on the engine, was, that it was a stormy night; and the proof seems to justify that claim. It was raining hard, say the witnesses. It was thundering and lightning sharply, and the front brakeman, after the train left the last station, which I think is Adrian, had gone down from the top of the train into the cab of the engine, and remained there until he received this injury. So that the condition of the weather is shown by the evidence to justify the position of the brakeman in the cab of the engine, under this rule, that he might occasionally ride on the engine. So that,unless an exigency arose, which, under the rules or the orders of his superiors upon that train, required him to go out from the engine and get upon the top of the train, he was in his proper place. But the rule provides, that in descending heavy grades and approaching stations, brakemen must be at their respective posts, and that the brakeman, when riding on the engine, must obey the engineman’s instructions as to the proper time to return to his post. Let us see whether the decedent comes within that provision of the rule. It is claimed, that in the construction of that rule — it was claimed on the trial below, and proof was offered to make that claim good, that in such weather as this was, the forward brakeman always rode in the engine. It was also claimed, that in descending or ascending grades like this, or this grade in particular, under such conditions of weather, it was customary for the forward brakeman to ride on the engine. I think that claim *576 is maintained by at least three witnesses called on behalf of the plaintiff. That testimony, it is true, was not offered so much with the idea of aiding in the construction of this rule, as upon the theory that the rule had been continuously and customarily violated by the employes of the railroad company, with the knowledge of the company or its immediate representatives, the conductor and engineer. It really was upon that theory that this case was submitted to the jury. We are not prepared to say that that was an improper theory where the evidence in the case tends to prove, that for a period of at least fourteen years before the happening of this accident, such had been the custom of the employes of this company, continuously followed, with the knowledge of the conductor, or assuming that it was with his knowledge, for it would hardly have been claimed that it would have been done so continuously without his knowledge, because he is directly charged, by the rule of the company itself, with a knowledge of the whereabouts of the employes of the train all of the time. That is one of his duties, and we may presume that he performed that duty always. So customarily and continuously, the forward brakeman had ridden in the engine while passing over grades like this. It was also, and of course could not have been otherwise, to the knowledge of the engineer. And under this very rule offered in evidence, the engineer is made the superior of the brakeman while he is in the cab of the engine, and the brakeman is placed directly under his orders, and commanded to observe the directions of the engineer, not as to what to do, but as to the time when he shall leave the engine and go upon the top of the train. One of the witnesses, who had been a brakeman-and a conductor for many years, testifies that the train men, those who manage and operate the train, did not consider this grade as such a heavy grade as comes within the terms and provisions of this rule. That evidence stands, so far as I am able to find, from a careful *577 reading of this record, uncontradicted. It was objected to, and an exception taken to it. I might as well say here, it seems to us proper that that evidence should be given, not to prove custom, nor upon the theory that the defendant’s rule had been abrogated; for, as we look at this case, it might well have been presented to the jury upon the theory that the rule had been observed, and there are words in the rule which may well require to receive construction from the acts and conduct of the railroad company and its agents, in obeying and following it out. There are several words stated in the rule upon which evidence can be given: “Inclement weather.” What is inclement weather? What wculd be considered inclement weather which would authorize a brakeman to leave his post on the top of a train ? So in descending and ascending heavy grades, what are those grades that require the brakeman to be on the top of the train, regardless of the weather, whether it be rain, or snow, or ice? And what construction has the railroad company itself put upon this rule by its acts? So, when a conductor of some years’ experience, both as a brakeman and conductor, is called to say what was the custom of the railroad company, and what they considered a heavy grade, it seems to us, that that would be proper, notwithstanding that, under some circumstances the grade in question might be called heavy. The grade that these men were descending at the time of this injury was heavy, so far as its descent was concerned, but it was an exceedingly short one. It was three-quarters of a mile long, and the train these men were running, was something more than a fifth of a mile in length, or about that. So that the length of the train was about a third the length of this entire grade, and the train ran down it, as the evidence in this case shows, from thirty to thirty-five miles an hour, when it passed over that bridge. So that the time consumed in passing three-quarters of a mile down that grade, would be a little more than a minute. It might *578 well have been the custom on the part of the employes of the railroad company, in a stormy night, in inclement weather, as the rule says, when once the forward brakeman had located hirüself in the locomotive cab, that he would not climb out over the tender and over the coal, and climb on the top of a slippery car, in order to observe a train passsing down a descending grade, at a rate which would take it less than two minutes to pass down. He would have hardly time to pass to the top of the car before it would enter the bridge, if he had started. So we think the testimony that it was an inclement night, and whether, uuder the circumstances, it was proper for the forward brakeman to be on the engine with the knowledge and consent of the engineer and those in charge of the train, were proper questions of fact, and that it would not necessarily abrogate this rule, although this case was presented to the jury upon the theory that it did. it might well have been claimed that it was to aid in the construction of the rule which the company’s agents had put upon it themselves by their own practice, and that that was with the knowledge and consent of the company and of the men who had charge of the trains, and who were the only representatives of the company who could have known it.
That the decedent, in view of this usage and practice, might well have remained in the engine cab. on such a night and at such a place, unless ordered by the engineer to go upon the cars, is, we think, well shown in this case. This rule makes the engineer the superior of the brakeman for that special order, and in the absence of such an order, a brakeman was not negligent in staying upon the .engine under the facts and circumstances that surrounded that man on that night.
Now, then, whether under these circumstances and in view of this proof, he was negligent in being upon the engine, was a question which could only be submitted to the *579 jury, and if they determine that he was not, we are unable to see our way in this case, to say that such a conclusion was wrong. They were also to determine whether he was at that time, in the performance of this general duty, to observe as well as he could, from the position he occupied, the condition of the train behind him. They were also to determine whether he knew,or ought to have known, of the existence or the proximity of the danger to be apprehended from this bridge, These were questions for the jury, and questions which we think the court properly submitted to the jury. We are not disposed, then, to hold that a verdict in favor of the plaintiff below, upon these questions of negligence, so clearly within the province of the jury, is not sustained by the evidence, or to hold that it is contrary to law.
Whether the railway company was negligent or not, was not specially urged to us; but I may say in general terms, that it was the duty of the railway company to use ordinary care to furnish structures and machinery reasonably safe and proper, for the work that was to be performed upon them; and if it was shown in this case that they erected a bridge with casings at the sides, ten or twelve feet high,- and so near to the track that a person in the discharge of his duty, in standing upon the cab of the engine, leaning out, looking for a light on the rear end of the train — an operation safe and proper in other respects — was liable to hit his head or his body upon the casings of the bridge, then it was a question for the jury, under all the facts and circumstances of the case, to determine whether the company was negligent. That, they found in this case against the railway company. We cann'ot say the finding was wrong.
It is said that the jury,by their verdict, answered certain questions, and upon those questions there ought to have been a judgment for the railway company. The questions *580 submitted to the jury were a little peculiar. Hardly any of them could have been decisive of this case, no matter which way they were answered. The first of this is, “Was the situation of the casing on the side of the bridge in question, open to ordinary view or observation?” The answer is “No, not under the circumstances.. ” They might just as well have answered that “yes,” for it would have had just as much effect on the verdict. It is common knowledge to us all, that a railroad casing constructed as this was, ten or twelve feet high, eighty feet long, twelve or fourteen inches thick, would have been open to ordinary observation, at least in daylight; and the evidence in this case, shows trs that it could have been seen, if anybody had been looking for it, or looking at it, 400 or 500 feet away, after night.
“2. Did the decedent know it? A. No.”
If they had answered that “yes,” it wouldn’t have made any difference. Suppose he did know of it — knew that there was a bridge and casing there; that is not the negligence alleged in the petition, that is not what the jury had to find in order to determine that the defendant company were liable. That the bridge was there, was admitted. The decedent might we'l have known it; but the charge of contributory negligence, depended on his knowledge, or means of knowledge, of the danger that there was in the existence and situation of that bridge at that particular-time and place.
“3. JBy the exercise of ordinary care and prudence on his-part in the performance of his service, could he have known-of it? A. No.”
“4. As this train was passing west down the Dover Hill-grade, across the bridge, was the time and place such as-rendered extra precaution necessary on the part of the head brakemanj in order to insure safety? A. Yes.”
I don’t know whether the precautions necessary to insure- *581 the safety,referred to those precautions which would insure the safety of a brakeman or the safety .of his train, — it is not clear. The brakeman was required to perform certain duties for the safety of the train; he was also required to use ordinary care for his own safety. Whether what is meant here was his safety or the safety of the train, is not apparent.
Potter & Emery, for Plaintiff in Error.
Geo. B. Boone, and J. K. Hamilton, for Defendant in Error.
“As the train was passing westerly down the Dover Hill to and upon the bridge, was the train descending a heavy grade? A. Yes.”
It is said, because of that answer, that the judgment ought to be for the Railway Company. We do not think so. As has been said, in the discussion which I have given of that question of heavy grade as bearing upon the decedent’s contributory negligence, it may still be a question. What construction had the company put upon this rule which required the decedent to be on top of the train part of the time, and allowed him to be in the engine the balance of the time, and whether it was considered a heavy grade or not; not whether, as a matter of fact, the grade itself was heavy, but whether the company’s agents and servants considered this grade as coming within the rule of the company requiring him to be-upon the top of the car when descending it. So that, while this might well be a .heavy grade, it could not defeat the decedent’s right of action where the company had considered and construed it to be a different kind of a grade, so far as the actions of the forward brakeman were concerned. ■
We have examined the charge of the court, and all the requests, and we do not find any error in the action of the court as to those. . .
The judgment will be affirmed.